UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH RINELL-GREGG, on behalf of
herself and all others similarly situated,

        Plaintiff,                Case No.

v.                                    Hon.

WALMART INC.,

        Defendant.

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

## COMPLAINT AND JURY DEMAND

Plaintiff Deborah Rinell-Gregg ("Plaintiff"), by and through her attorneys, HURWITZ LAW, PLLC, individually and on behalf of all other similarly situated individuals, brings this action against Walmart Inc. ("Defendant"), and hereby alleges as follows:

## **INTRODUCTION**

1. This is an employee rights lawsuit precipitated by Defendant's discriminatory animus against its elderly employees and those with disabilities. Plaintiff was an exemplary employee for more than a decade before she began experiencing health problems that forced her to take short term and long-term leave. While Plaintiff was on leave, she received an "End of Leave" letter Defendant instructing her to contact her HR manager. Plaintiff immediately complied with Letter's instructions, only to be informed that she had already been placed on the schedule to work *prior* to her receipt of the letter. Defendant therefore charged Plaintiff with several "no-call no shows," and subsequently terminated Plaintiff without any documentation. Since then, Plaintiff has learned that Defendant has a pattern and practice of retaliating against employees who are on a protected medical leave by placing them on the work schedule without notice so that they can manufacturer terminations for "no call no show" when the employee misses work. This practice violates the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and the Family Medical Leave Act of 1933, 29 U.S.C. § 2601 *et seq*. Accordingly, on behalf of herself and the Putative Class proposed herein, Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and all other appropriate relief.

## PARTIES AND JURISDICTION

2. Individual and representative Plaintiff Deborah Rinell-Gregg is a resident of the City of Fowlerville, County of Livingston, and the State of Michigan.

3. Defendant is a foreign profit corporation headquartered in Bentonville, Arkansas, and regularly conducts business in Fowlerville, Michigan.

4. This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*.

5. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district in which Defendant regularly conducts business and the district in which the events giving rise to Plaintiff's claims transpired.

7. The facts and unlawful employment practices within the meaning of the ADA and the FMLA giving rise to this Complaint occurred within the Eastern District of Michigan.

8. Defendant is an employer and Plaintiff was its employee at all relevant times within the meaning of the ADA and the FMLA.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment with Defendant

9. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

10. At all times relevant to this Complaint, Defendant was Plaintiff's employer, and Plaintiff was Defendant's employee.

11. Defendant hired Plaintiff to work at its Fowlerville store in 2008.

12. Plaintiff, a dedicated employee for over thirteen years, had no history of discipline or performance issues prior to her termination.

13. Recently, within the last few years, Plaintiff began to experience some health issues.

14. Plaintiff's health issues forced her to take short-term disability leave and then long-term disability leave.

15. On July 3, 2021, Plaintiff received an "End of Leave" letter from Defendant dated June 25, 2021.

16. The End of Leave letter indicated that Plaintiff needed to contact her manager or HR within three (3) days of *receipt* of the letter regarding a return to work.

17. After receiving the letter, Plaintiff promptly contacted HR representative Summer Hall-Hulett.

18. Ms. Hall-Hulett thereafter informed Plaintiff that she had been placed on the schedule to work *prior* to receiving the letter and Plaintiff therefore "no call-no showed."

19. On July 7, 2021, Plaintiff traveled to Defendant's Fowlerville location to seek further clarification regarding her work schedule, as well as to propose reasonable accommodations for Defendant to implement upon Plaintiff's return to work.

20. However, Ms. Hall-Hulett refused to speak with Plaintiff upon her arrival to Defendant's Fowlerville location on July 7, 2021.

21. Instead, Walmart manager Dale Hiebert informed Plaintiff that she had been terminated.

22. Defendant terminated Plaintiff for not showing up to work, even though Plaintiff never received notice that she had been scheduled to return to work.

23. Plaintiff attempted numerous times to discuss the timing and nature of her return to work with Ms. Hall-Hulett in May, 2021, and early June, 2021.

24. Specifically, in late May, 2021, Plaintiff spoke with Ms. Hall-Hulett to inform her that she was awaiting a release from her physician allowing her to return to work.

25. During the same conversation in late May, 2021, Plaintiff informed Ms. Hall-Hulett that she would need a reasonable accommodation upon her return to work since she could no longer climb ladders.

26. Rather than engaging with Plaintiff in meaningful conversation regarding her request for accommodation, Ms. Hall-Hulett pressured Plaintiff to simply retire, asking Plaintiff "why don't you just retire?"

27. Plaintiff was later terminated from Defendant without any documentation.

28. At no time did Defendant inform Plaintiff that she had been placed on the schedule to work or otherwise needed to report to work on a certain date until she received her End of Leave letter on July 3, 2021.

29. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on age and disability on January 2, 2022.

30. Plaintiff has suffered actual damages because of Defendant's violations, including loss of employment and mental anguish.

## CLASS ACTION ALLEGATIONS

31. Plaintiff asserts her claim in Count One on behalf of the "FMLA Retaliation Class" as defined as follows:

> **FMLA Retaliation Class:** All former Walmart employees in the State of Michigan who at the completion

of a protected FMLA leave of absence were placed on the work schedule without actual notice so that they could be subsequently terminated for "no call no show" when they did not report to work.

32. Plaintiff asserts her claim in Count One on behalf of the "ADA Retaliation Class" as defined as follows:

> **ADA Retaliation Class:** All former Walmart employees in the State of Michigan who were placed on the work schedule without actual notice after returning to work from a disability leave so that they could be subsequently terminated for "no call no show" when they did not report to work.

33. **Numerosity**. The Putative Class is so numerous that joinder of all Class members is impracticable. Defendant retaliates against employees in the State of Michigan who are on protected FMLA leave of absence by placing them on the work schedule without actual notice so that they could be subsequently terminated for "no call no show" when they don't report to work. Defendant's policy violates the FMLA and discriminates pursuant to the ADA. Upon information and belief, in excess of one hundred of Defendant's Michigan employees satisfy the definition of the Putative Class.

34. **Typicality**. Plaintiff's claim is typical of the members of the Putative Class. Defendant typically retaliates against employees on protected FMLA leave by placing them on the work schedule without actual notice so that they could be subsequently terminated for "no call no show." The FMLA and ADA violations

6

suffered by Plaintiff is typical to those suffered by other Putative Class members, and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

35. **Adequacy**. Plaintiff is an adequate representative of the Putative Class. Plaintiff's interests are aligned with, and are not antagonistic to, the interests of the members of the Putative Class. Plaintiff has retained counsel competent and experienced in complex class action litigation.

36. **Commonality**. Common questions of law and fact exist as to all members of the Putative Class, including but not limited to:

    a.    Whether Defendant violated the FMLA by failing to reinstate employees to the position of employment held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment at the expiration of protected FMLA leave.

    b.    Whether Defendant violated the FMLA by manufacturing a pretextual reason to terminate employees by placing them on the work schedule without actual notice so that they could be subsequently terminated for "no call no show;"

    c.    Whether Defendant violated the ADA by failing to accommodate employees returning to work from a protected medical leave;

    d.    Whether Defendant violated the ADA by manufacturing a pretextual reason to terminate employees by placing them on the work schedule without actual notice so that they could be subsequently terminated for "no call no show;"

    e.    The proper measure of damages; and

    f.    The proper form of injunctive and declaratory relief.

37. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a part to such action, impeding their ability to protect their interests.

38. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

39. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods of the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FMLA and ADA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Putative Classes on an individual basis. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

40. Plaintiff intends to send notice to all members of the Putative Class to the extent required by Rule 23. The names and addresses of the Putative Class members are available from Defendant's records.

## COUNT I
## RETALIATION IN VIOLATION OF
## THE FAMILY MEDICAL LEAVE ACT
### (Asserted on behalf of Plaintiff and the FMLA Retaliation Class)

41. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

42. At all times relevant to this Complaint, Defendant was Plaintiff's employer.

43. Plaintiff's disability qualifies as a "serious health condition," under the Family Medical Leave Act because it has involved both "inpatient care in a hospital" as well as "continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

44. The Department of Labor regulations specifically prohibit an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempting to exercise" his or her rights under that statute. 29 C.F.R. § 825.220(c).

45. Plaintiff engaged in protected activity by agreeing to and being placed on protected leave as defined by the FMLA.

46. Defendant retaliated against Plaintiff and similarly situated members of the FMLA Retaliation Class by not reinstating her employment at the expiration of her protected leave as defined by the FMLA.

47. Defendant terminated Plaintiff and similarly situated members of the FMLA Retaliation Class employment due to the exercise of rights under the FMLA.

48. A causal connection exists between the exercise of Plaintiff's and similarly situated members of the FMLA Retaliation Class protected rights and their termination. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation." *Mickey v. Zeidler tool & Die Co.*, 516 F.3d 516, 525 (6th. Cir. 2008).

49. Defendant failed to comply with 29 U.S.C. § 2614(a)(1)(A)-(B), which states that an employee returning from medical leave has the right to "be restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

50. The proffered reason for Plaintiff's and similarly situated members of the FMLA Retaliation Class termination is pretextual. Plaintiff and similarly situated members of the FMLA Retaliation Class were retaliated against for exercising her rights under the FMLA.

51. Defendant's actions in violation of the FMLA were willful.

52. As a direct and proximate result of Defendant's interference and retaliation against Plaintiff for exercising her FMLA rights, Plaintiff suffered feelings of depression, emotional and physical distress, mental and physical anguish,

11

loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

53. As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## COUNT II
## FAILURE TO ACCOMMODATE AND
## DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT
### (Asserted on Behalf of Plaintiff Individually)

54. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

55. Plaintiff has a "disability" as defined in 42 U.S.C. § 12102(1).

56. Plaintiff was a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2), as she had physical impairments that substantially limited her in the performance of major life activities.

57. Despite her disability, Plaintiff was always qualified to perform the essential functions of her job with or without reasonable accommodation.

58. Plaintiff made numerous flexible requests for reasonable accommodations.

59. Such accommodations would not have been unduly burdensome to Defendant.

60. Defendant is an employer within the meaning of the ADA.

61. Defendant knew or had reason to know of Plaintiff's disability.

62. Defendant failed to accommodate Plaintiff, failed to engage in the interactive process required under the ADA, and otherwise subjected Plaintiff to adverse employment actions based on her disability as described above, including but not limited to failing to engage in the interactive process and then unlawfully terminating her.

63. Defendant's treatment and termination of Plaintiff violates the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq.

64. Defendant's decision to discriminate against and ultimately discharge Plaintiff was motivated in substantial part by Plaintiff's disability and/or Defendant's assumptions and unreasonable perceptions of Plaintiff's medical condition.

65. Defendant's actions in violation of the ADA were willful.

66. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

(A)  Determine that this action may proceed as a class action under Rule 23(b)(1), (2); and

(B)  Declare that the aformentioned practices and actions of Defendant consistute unlawful violations of the ADA and FMLA.

(C)  Declare that Defendant acted wilfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FMLA and ADA.

(D)  Award Plaintiff compensatory, economic, and nonecomonimc damages in whatever amount Plaintiff is found to be entitled, including all lot wages and benefits, past and future, in whatever amount she is found to be entitled;

(E)  Award Plaintiff compensatory damages for monetary and nonmonetary loss in whatever amount she is found to be entitled;

(F)  Award Plaintiff exemplary and punitive damages in whatever amount she is found to be entitled;

(G)  Award Plaintiff reasonable attorneys' fees, costs, and interests; and

(H)  Award such other relief as this Court deems just and proper.

Respectfully submitted,
HURWITZ LAW PLLC

 /s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489

Dated:  October 21, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH RINELL-GREGG, on behalf of
herself and all others similarly situated,

       Plaintiff,                            Case No.

v.                                             Hon.

WALMART INC.,

       Defendant.

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, Deborah Rinell-Gregg, by and through her attorneys, HURWITZ LAW PLLC, and on behalf of herself, and the Putative Class set forth, hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                          Respectfully submitted,
                                          HURWITZ LAW PLLC

                                          */s/ Noah S. Hurwitz*
                                          Noah S. Hurwitz (P74063)
                                          *Attorneys for Plaintiff*

Dated: October 21, 2022